**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

Kelsey Gancarz, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Beech-Nut Nutrition Company,

Defendant

Class Action Complaint
Case No.: 1:21-CV-0258 (TJM/CFH)

Jury Trial Demanded

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Beech-Nut Nutrition Company ("defendant") manufactures, distributes, labels and sells baby food products in numerous forms, i.e., pouches, purees, snacks, etc., under its Beech-Nut brand ("Products").

2. Defendant knows consumers value representations that the Products do not contain specific ingredients or components, as shown by its statements they are free from GMOs, artificial preservatives, artificial colors, and artificial flavors.

3. Consumers expect the food they feed their infants and toddlers to be free from any substances which can have significant and dangerous health consequences.

4. The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[1]

[1] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report ("House Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, February 4, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

5.  These four heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as the "permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[2]

6.  Arsenic exposure creates a risk of "respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system."[3]

7.  The FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic and is also considering limiting the action level or arsenic in rice cereal for infants to 100 ppb.[4]

8.  Lead exposure harms children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed development, and reduced postnatal growth."[5]

9.  Young children are vulnerable to lead because the physical and behavioral effects of lead occur at lower exposure levels in children than in adults.

10. EPA has set the maximum contaminant level goal for lead in drinking water at zero because lead is toxic metal that can be harmful to human health even at low exposure levels.

11. The Agency for Toxic Substances and Disease Registry states that there may be no threshold for lead with regards to developmental impact on children.

12. Mercury increases the risk for cardiovascular disease and can cause vision,

---

[2] Healthy Babies Bright Futures Report, at 6.
[3] House Report, at 10 (quoting Miguel Rodríguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioural Disorders in Children: A Systematic Review and Meta-Analysis* (June 1, 2013) (online at https://pubmed.ncbi.nlm.nih.gov/23570911/)).
[4] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr.2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/UCM493152.pdf.
[5] House Report, at 11.

intelligence, and memory problems for children exposed in utero.

13. The FDA has set a maximum mercury level in drinking water to 2 ppb.

14. Cadmium is linked to neurotoxicity, anemia, liver disease, cancer, and kidney, bone, and heart damage.

15. Health and environmental regulatory bodies have set maximum cadmium levels in drinking water to 3 and 5 ppb.

16. A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, revealed that defendant's "[i]nternal company standards permit dangerously high levels of toxic heavy metals" in their Products.

17. Defendant's internal limit for inorganic arsenic is 3,000 ppb and has used ingredients with as much as 913.4 ppb arsenic.

18. Defendant sold Products which contained upwards of 148 ppb cadmium, above its internal limit of 9 ppb.

19. Defendant's internal limit for lead is 5,000 ppb, far beyond any existing regulatory standard and its Products contained as much as 886.9 ppb lead.

20. Though defendant conducts some testing for these substances, the products are sold to consumers regardless of the level of heavy metals they contain.

21. Defendant only tested the ingredients it used instead of the finished products.

22. Defendant claims their Products are tested for heavy metals and that they abide by the highest testing standards in the industry.

23. Defendant's Products tout the simple nutritious ingredients they purportedly contain, while omitting any reference to the dangerous levels of heavy metals they also contain.

24. Defendant knows that consumers expect to purchase baby foods that will not cause

harm or risk of harm, and that assurances of quality induce them to pay more than they otherwise would.

25. No reasonable consumer seeing defendant's marketing would expect the Products to contain heavy metals above trace levels.

26. Had plaintiff and the proposed class members known the truth, they would not have bought the Products or would have paid less for them.

27. As a result of the false and misleading representations, the Products are sold at premium prices, approximately no less than no less than $1.79 for jars of 4 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than they would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

28. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

29. Under CAFA, district courts have original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity.

30. Plaintiff is a citizen of Massachusetts.

31. Defendant Beech-Nut Nutrition Company is a Delaware corporation with a principal place of business in Amsterdam, Montgomery County, New York.

32. Diversity exists because plaintiff and defendant are citizens of different states.

33. Upon information and belief, sales of the Products and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

34. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here and Defendant's principal place of business is in the Northern District of New York, Montgomery County.

Parties

35. Plaintiff is a citizen of North Adams, Berkshire County, Massachusetts.

36. Defendant Beech-Nut Nutrition Company is a Delaware corporation with a principal place of business in Amsterdam, Montgomery County, New York.

37. Defendant's "Beech-Nut" is a leading baby food brand.

38. Defendant's use of the words "Organics" and "Naturals" in the names of its Products represents they are high quality and will not contain harmful or potentially harmful components.

39. The Products are sold to consumers from retail and online stores of third-parties across the country.

40. Plaintiff bought the Products on one or more occasions within the statute of limitations for each cause of action alleged, from one or more locations, such as Walmart, 1415 Curran Memorial Hwy, North Adams, MA 01247, numerous times over the past year, for the consumption of children.

41. Plaintiff bought the Products at or exceeding the above-referenced price because she wanted to buy a product with the qualities and attributes represented herein and relied upon what the label indicated and omitted.

42. Plaintiff would not have purchased the Products in the absence of defendant's misrepresentations and omissions.

43. The Products were worth less than what plaintiff paid and she would not have paid as much absent defendant's false and misleading statements and omissions.

44. Plaintiff intends to, seeks to, and will purchase the Products again when she can do so with the assurance that Products' labeling is consistent with its composition.

Class Allegations

45. The class will consist of all purchasers of the Products who reside in Massachusetts and Maine during the applicable statutes of limitations.

46. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

47. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

48. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

49. Plaintiff is an adequate representative because her interests do not conflict with other members.

50. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

51. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

52. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

53. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statutes)

54. Plaintiff incorporates by reference all preceding paragraphs.

55. Plaintiff and class members desired to purchase products without high levels of toxic heavy metals.

56. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

57. Defendant misrepresented the Products through its statements, omissions, ambiguities, half-truths and/or actions.

58. Defendant intended that plaintiff and the Class rely upon defendant's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

59. Defendant knew or should have known that its representations and omissions about the Product's contents were material and likely to mislead consumers.

60. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

61. Plaintiff incorporates by reference all preceding paragraphs.

62. The Products were manufactured, labeled and sold by defendant and warranted to plaintiff and class members that it possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and health-related attributes which it did not.

63. The absence of toxic heavy metals was impliedly warranted because of the numerous health-related statements.

64. Defendant had a duty to disclose and/or provide non-deceptive descriptions and

marketing of the Products.

65. This duty is based on defendant's outsized role in the market for this type of Products.

66. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

67. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Products.

68. The Products did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

69. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

70. Plaintiff incorporates by reference all preceding paragraphs.

71. Defendant had a duty to truthfully represent the Products, which it breached.

72. This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

73. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

74. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

75. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Fraud

76. Plaintiff incorporates by reference all preceding paragraphs.

77. Defendant misrepresented and/or omitted the attributes and qualities of the Products.

78. Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues described herein, when it knew not doing so would mislead consumers.

79. Defendant was aware of these issues for almost two years yet failed to inform consumers.

80. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

81. Plaintiff incorporates by reference all preceding paragraphs.

82. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the

applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: March 4, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cutter Mill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

United States District Court
Northern District of New York

Kelsey Gancarz, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Beech-Nut Nutrition Company,

Defendant

Class Action Complaint

Sheehan & Associates, P.C.
60 Cutter Mill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800

Dated: March 4, 2021

/s/ Spencer Sheehan
Spencer Sheehan